RYAN v. HALLIGAN.

(Supreme Court, Appellate Division, Third Department. December 30, 1909.)

1. GIFTS (§ 16*)—INTER VIVOS—ENFORCEMENT—EXECUTORY GIFTS.
    An executory promise of a gift cannot be enforced for lack of consideration.

    [Ed. Note.—For other cases, see Gifts, Dec. Dig. § 16.*]

2. COMPROMISE AND SETTLEMENT (§ 23*)—ACTION ON AGREEMENT—SUFFICIENCY OF EVIDENCE—EXISTENCE OF CONTRACT.
    In an action on an alleged contract, claimed to have been made by defendant's testator, to pay plaintiff's intestate $10,000 in consideration of the compromise of a suit, evidence held not to show the making of any such contract by testator solely on that consideration.

    [Ed. Note.—For other cases, see Compromise and Settlement, Dec. Dig. § 23.*]

3. COMPROMISE AND SETTLEMENT (§ 6*)—VALIDITY. OF AGREEMENT—CONSIDERATION.
    One threatened with suit on a claim could make a valid contract of settlement, even if the consideration given was exorbitant.

    [Ed. Note.—For other cases, see Compromise and Settlement, Dec. Dig. § 6.*]

4. EXECUTORS AND ADMINISTRATORS (§ 221*)—ALLOWANCE OF CLAIMS—SUFFICIENCY OF EVIDENCE.
    The courts will sharply scrutinize testimony as to long-past transactions upon which claims against an estate are based, and will require a high degree of probability to establish obligations shown chiefly by admissions of deceased parties to the transactions.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 903; Dec. Dig. § 221.*]

Appeal from Trial Term, Rensselaer County.

---

Action by Anna F. Ryan, as administratrix of the goods of Margaret Smith, deceased, against John J. Halligan, as sole executor of Catherine Clark deceased. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

William J. Ludden (Samuel Foster, of counsel), for appellant.
A. E. Delaney (John B. Holmes, of counsel), for respondent.

SMITH, P. J. This is an action to recover certain unpaid sums upon a contract alleged to have been made by Catherine Clark, now deceased, with Margaret Smith, also deceased, by way of compromise and settlement of a suit threatened by the latter on account of two transfers of real estate to said Catherine Clark by one Mary Ann Clark; said transfers being claimed to be voidable on the ground of undue influence. All of said parties were sisters, and at the times of the transfers and alleged compromise in April, 1893, there were also living of the family a brother, Matthew Clark, and another sister, Jane Halligan. Matthew died in November, 1903, leaving a son, Joseph H. Clark; and Jane died in 1900, leaving two sons, John J. Halligan, the defendant herein, and Joseph W. Halligan. Margaret Smith died in 1903, leaving two daughters, Anna Ryan, the plaintiff, and Mary Nolan. Mary Ann Clark died in 1893, soon after executing the transfers in question, and Catherine Clark died in 1905. The plaintiff claims upon a compromise agreement for $10,000. This agreement is testified to directly by Joseph H. Clark, the only competent living witness claimed to have been present at the time. In further support of plaintiff's claim there is evidence by herself and her sister, and also by two disinterested witnesses, as to admissions by Catherine Clark of making payments on a sum of $10,000, or that she had agreed to pay Margaret Smith the sum of $10,000, to avoid threatened suit. It is undisputed that sums amounting in all to about $4,500 were paid by Catherine Clark to this sister, and the only question is as to whether such payments were made in pursuance of a valid contract to pay $10,000, or, as is claimed by defendant, were simply payments as a pure gratuity on account of an entire sum of $5,000 which Catherine, or others of the family, had promised to pay her sister. The jury found for the plaintiff, and gave judgment for $5,500, the entire amount claimed to be still due on the $10,000 agreement.

The defendant's testimony in person was of admissions by plaintiff and her sister that Catherine Clark alone, or with Mary Ann Clark and Jane Halligan, was to give Margaret Smith $5,000 for a house, and that this amount had been wholly or almost paid. Defendant also introduced a disinterested witness, who testified to an admission by Margaret Smith that Mary Ann Clark and Jane Halligan had agreed to give her $3,000 towards buying a house. It appeared that several of these sisters had been in business together, and that Catherine Clark had helped various members of her family financially, including this defendant; that there had been several suits or proceedings instituted since the death of Catherine Clark with regard to her estate by her

heirs; and that much bad feeling existed between different members of the family. It also appeared that in one of these suits both the plaintiff and her sister had made certain affidavits to the effect that Catherine Clark had paid Margaret Smith the sum of $4,500 in payment for what Margaret Smith paid and contributed towards buying lots known as "A," "B," and "C," purchased about 1865, which affidavits are not, apparently, reconcilable with the present claims of the plaintiff. Moreover, in considering the inherent probability· of the contract sued upon, regard must be had to the actual value of the property in question and the consequent value of any claim therein that could possibly have been set up by Margaret Smith. The value of the property covered by the two deeds claimed to have been made under undue influence was testified to by a witness for plaintiff as being from $25,000 to $30,000, while the defendant and· his witnesses placed its value at from $15,000 to $18,000. At the time of the alleged contract of settlement, after the death of Mary Ann Clark, her sole heirs were her three living sisters and one brother, so that, if the deeds referred to had been set aside, Margaret Smith would only have been entitled to a one-fourth undivided' interest therein; that is, in property worth at the outside, we may assume, not more than $25,000. It is accordingly most improbable that any one would have agreed to give $10,000 to settle a disputed claim of some $6,250, and this glaring· improbability is not, in our opinion, satisfactorily accounted for.

But, if we give full effect to the testimony in the case as to Catherine Clark having mentioned $10,000 as the sum she was to pay her sister, it is difficult to avoid the· conclusion that this sum must have included both the amount payable by way of compromise, if so agreed, and also a sum or sums which she had promised her sister by way of gratuity merely. It appears that Catherine, as stated, had helped different members of her family, having, for instance, given her brother Matthew $3,000, and that her sister Margaret had expected or asked for some similar gift, so that the only reasonable explanation upon the evidence of any agreement to pay any sum as large as $10,000 to Margaret is that such sum was the aggregate both of a compromise· payment and of some gift. If, therefore, any part of this $10,000 claimed to have been promised was in fact a gift, this action must fail on account of the lack of any consideration for the promise. We cannot, upon the evidence in· the case, support the verdict by assuming to separate the $10,000 into two portions, one of which would be supported by a valid consideration, and then assume that the payments made, excepting one sufficient to prevent the running of the statute of limitations, were on account of the. gift only. It was undoubtedly competent for Catherine to make a valid contract of settlement with her sister, even for an exorbitant amount, if such amount were promised solely to avoid suit; but such a contract should be established by strong evidence in order to outweigh the natural improbability of the situation. When claims are presented against the estates of· decedents, the courts will scrutinize sharply testimony as to· long-past transactions, and will require a· high degree of probability to establish obligations made out chiefly, as in this case, by

statements in the form of admissions which are easily capable of being misunderstood.

Judgment should be reversed as against the weight of evidence, and a new trial ordered, with costs to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event.   All concur.